D. F. Cash and Geo. H Spellmire, for defendants.

---

(Superior Court of Cincinnati.)
Special Term, 1897.

GEO. B. HARTE v. AUGUST H. BODE, THOMAS C. MINOR, BEN- JAMIN F. EHRMAN AND CHAS. A. MILLER, CONSTITUTING THE BOARD OF ELECTIONS OF THE CITY OF CINCIN- NATI.

---

At the November election of 1894, George Hobson was elected clerk of the Common Pleas Court of Hamilton coun- ty, for a term of three years, beginning on the first Monday of August, 1895. In May, 1897, he resigned, and the county commissioners appointed E. R. Monfort, as clerk pro tempore. Subsequently the different political parties made nomina- tions for the election of a clerk at the November election of 1897: and one of the nominees made application to the Board of Elections for Hamilton coutny, to have his name printed on the official ballot twice, viz: once as a candidate for the unexpired term of George Hobson, ending on the first Monday of August, 1898, and again as a candidate for the

regular term of three years, beginning on the first Monday of August, 1898.

Held: 1. That, by virtue of the ap- pointment by the county commissioners, Monfort held the office of clerk until the first Monday of August, 1898; and there- fore, there was no unexpired term to be filled.

2. That the person elected at the No- vember election, would be elected for the full term of three years, beginning on the first Monday of August, 1898.

3. That the Board of Elections proper- ly refused to print the name of any nominee for such office more than once upon the official ballot.

---

SMITH, J.

The questions in this case arise by a demurrer to the petition which sets out fully the facts of the case in regard to which there appears to be no serious dispute between the parties.

Briefly stated the facts are as follows:

At the November election of 1894, George Hobson was elected clerk of the common pleas court, an office popularly known as "County Clerk."

By the law then in force, and which is in force today, he entered upon the discharge of the duties of the office on the first Monday of August of the suc- ceeding year, viz: 1895. Had he served out his term it would have ended on the first Monday of August, 1898. Instead, however, of serving out the term for which he had been elected, he resigned in May, 1897; and the county commis- sioners, by virtue of sec. 1243 of the Rev. Stats. of Ohio, appointed E. R. Monfort, as clerk pro tempore, who gave bond, took the oath of office, and entered upon the discharge of the duties of the same, and is still acting as such clerk.

For the November election of this year, (1897,) the different political parties have made nominations for the office of the clerk of the common pleas court.

The plaintiff is the nominee of the Democratic party for such position, and has made application to the Board of Elections of this city, to have his name appear upon the ballot twice as the nominee of such party to fill the un- expired term of George Hobson, which he contends extends to the first Monday in August, 1898, and again as the nominee of such party for the full term of three years, beginning with the first Monday of August, 1898.

No question is raised here at this time as to the regularity of his nomination for these two positions, if there are two positions to be filled; but the Board of Elections disputes his construction of the law by which he contends there are two positions to be filled, and on the contrary, insists that there is but one position to be filled, viz: the regular term for three years, beginning on the first Monday in August, 1898, and there-

fore that his name should appear but once on the official ballot.

When the application was first made by the plaintiff to the board, as it was in doubt as to the correctness of the plaintiff's contention, it referred the matter to the secretary of state; the latter official having rendered an opinion adverse to the plaintiff, the board has followed such opinion and its acts are in accordance therewith.

The plaintiff, therefore, has brought this action, asking for a mandatory injunction to compel the defendants to print his name as requested.

In the case of a few officers, the constitution of the state specifically provides the manner in which vacancies shall be filled, but in the case of all other officers the manner of filling vacancies, by Act 2, sec. 27, of the constitution, is referred to the General Assembly. This latter provision of the constitution is as follows:

"The election and appointment of all officers and the filling of all vacancies not otherwise provided for by this constitution or the constitution of the United States, shall be made in such manner as directed by law."

The office of the clerk of the common pleas court, is created and the length of the term fixed by the constitution in art. 4, sec. 16, in the following language:

"There shall be elected in each county by the electors thereof, one clerk of the court of common pleas, who shall hold his office for three years and until his successor shall be elected and qualified. He shall, by virtue of his office, be clerk of all other courts of record therein."

It will be observed that this section fixes no particular time for the commencement of the term of office of the clerk, and prescribes no manner in which a vacancy therein is to be filled, and, as no other section of the constitution makes special provision therefor, the entire matter is one for legislation by the General Assembly, and to that effect are the decisions of the supreme court in the State v. Neibling, 6 Ohio St., 123. State ex rel. McCracken, 53 O. S., 123.

As the legislative will is expressed by statutes, the question presented by this case is purely one of statutory construction.

The statutes directly involved are the following:

"§1240. There shall be elected triennially in each county a clerk of the court of common pleas, who shall hold his office three years, beginning the first Monday of August next, after his election.

"§1243. When a vacancy in the .office of clerk occurs, the county commissioners shall appoint a clerk pro tempore who shall give bond and take the oath of office as prescribed for the clerk-elect,

and if the commissioners are not in session on the occurring of such vacancy, the county auditor shall forthwith give written notice to them of the fact, and they shall thereupon meet and make the appointment; but, if the commissioners fail to appoint for ten days after they severally have had notice of the vacancy, the appointment shall be made by the county auditor.

§11. When an elective office becomes vacant and is filled by appointment, such appointee shall hold the office till his successor is elected and qualified, and such successor shall be elected at the first proper election that is held more than thirty days after the occurrence of the vacancy; but this section shall not be construed to postpone the time for such election beyond that at which it would have been held had no such vacancy occurred, nor to affect the official term, or the time for the commencement of the same of any one elected to such office before the occurrence of such vacancy."

The contention of the plaintiff is, that by virtue of §11, when a vacancy occurs in this office and an appointment has been made to fill it, if such vacancy occurs more than thirty days preceding the next proper election, there must be an election at such proper election to fill the unexpired term; and, as the time for this election and for the election for the regular term of three years is, in this instance, at the same election, there must be an election to fill the unexpired term, and also, to fill the regular term.

The contention is important, for the reason that the regular term does not begin until August, 1898, and if the plaintiff's construction is correct, and he should be elected to fill the unexpired term, he would have the right immediately after the election, upon giving bond and taking oath, to enter upon and discharge the duties of the office; whereas, if the defendants' construction is correct, the present incumbent, Monfort, by virtue of his appointment, is entitled to remain in the office until August, 1898.

The supreme court has decided that "the first proper election" referred to in sec. 11, is the "first regular occurrence of that election at which the officer, whose successor is to be chosen, was elected; or, in other words, the first election occurring appropriate to that particular office under the law regulating elections to that office." State v. Barbee, 45 Ohio St., 349.

There is no dispute, therefore, that the time has arrived for the election provided for in sec. 11.

Is the election under this section for an unexpired term?

It is a significant circumstance, not in itself conclusive, but nevertheless militating against the claim of the plaintiff, that if such election is for the unexpired

term, the section does not so declare, in express language. For both in the constitution and the statutes, we have frequent instances of explicit declarations that elections shall be held to fill the unexpired term of an officer, and if such had been the intention of the legislature by the enactment of sec. 11, it is strange that it did not so declare, instead of so wording the section as never to refer in express language to unexpired terms. A simple declaration that the election was for the unexpired term, would have been the most natural manner of expressing the idea, would have been the mode of expression adopted by the constitution and the statutes, and would have freed the section from all ambiguity.

The following are instances in the constitution and statutes of an explicit declaration that an election is to be for an unexpired term.

In Act 4, sec. 13, of the constitution, it is declared that:

"In case the office of any judge shall become vacant before the expiration of the regular term for which he was elected the vacancy shall be filled by appointment by the Governor, until a successor is elected and qualified, and such successor shall be elected for the unexpired term at the first annual election that occurs more than thirty days after the vacancy shall have happened."

And in Act 2, sec. 11, it is declared that:

"All vacancies which may happen in either house shall for the unexpired term be filled by election as shall be directed by law."

In sec. 841, of the Rev. Stats., it is provided that:

"When it becomes necessary to elect a commissioner to fill a vacancy occasioned by death, resignation or removal, the person elected shall hold his office for the unexpired term for which his predecessor was elected."

And in sec. 1724, it is provided that:

"When a vacancy happens in the members of council and board of aldermen, a special election shall be held within twenty days thereafter, unless the annual municipal election occurs within sixty days after the vacancy, and the mayor shall designate the time and place or places of such election, but at least ten days public notice of it shall be given; provided, that in a village the mayor by and with the consent of council, shall have power to fill vacancies in the board from the electors of the corporation, to serve till the next annual municipal election, when a person shall be elected to serve for the unexpired term."

And in sec. 1713, it is provided that:

"Unless otherwise provided in this title when an office filled by the electors of the corporation becomes vacant, the mayor shall, with the advice and consent of the council, fill the vacancy until the next annual municipal election, when a successor shall be elected for any unexpired term, unless the vacancy occurs within ten days of such election, in which event the appointment shall be for the unexpired term."

In addition to the class of cases in illustration of which I have cited sections of the constitution and the statutes, there appears to be another class, viz., where the appointment is itself for the unexpired term. An illustration of this class, is sec. 1208, in which it is declared that:

"When the office of sheriff becomes vacant, the countty commissioners shall appoint some suitable person to fill the vacancy, who shall give bond and take the oath of office prescribed for the sheriff, and hold his office for and during the unexpired term of the sheriff whose place he fills."

It is possible that a more extended examination of the statutes than I have been able to make since yesterday, when the case was argued and submitted to me, would disclose instances in which the election or appointment would not be declared in express terms to be for the unexpired term, because, from the context in which the vacancy is referred to and the nature of the office, such an implication necessarily follows. Whether there is such a class of cases I do not express an opinion.

But the circumstance of the absence of any reference in sec. 11, to an unexpired term, is not the only circumstance that militates against the construction of plaintiff, that the election therein provided for, is for an unexpired term.

For a period of nearly thirty years prior to the revision of the statutes of the state in 1880, there is no question but that the law was as it is now contended by the defendants to be—an election for the full term of three years. Thus, by the act of January 31, 1852, it was provided that:

"In case a vacancy shall happen in the office of clerk in any county in this state, by death, resignation or otherwise, the commissioners of said county are hereby authorized to appoint a clerk pro tempore, who shall hold his office until the October election next ensuing such appointment and until his successor shall be elected and qualified; provided, said appointment shall have been made at least fifteen days before the October election. Otherwise, said clerk so appointed shall continue in office under and by virtue of his said appointment, until the October election, to be held in the year next thereafter, and until his successor has been elected and qualified."

In construing this act the supreme court of the state held that, in case of a vacancy in the office of clerk of the court of common pleas, the successor

elected by the electors of the county was elected for the full term of three years, which would commence from and after the day of his election, and that the election, was not to fill an unexpired term. State v. Neibling, 6 Ohio St., 40.

In 1872 (69 v. 97) the law was amended so that the newly elected clerk did not enter upon his office until the second Monday of February succeeding his election, instead of immediately after the election; and, as the term of clerk was fixed to begin on the second Monday of February, the law from 1872 to 1880 was as now contended by plaintiff, except that the election was in October instead of November, and the term commenced in February instead of August.

The law of 1872 read as follows:

"Sec. 6. In case a vacancy shall happen in the office of clerk in any county in this state, by death, resignation or otherwise, the commissioners of said county are hereby authorized to appoint a clerk pro tempore, who shall hold his office until the second Monday of February succeeding the October election next ensuing such appointment, and until his successor shall be elected and qualified; provided, said appointment shall have been made at least twenty days prior to said October election, otherwise said clerk so appointed shall continue in office under and by virtue of his said appointment until the second Monday of February next succeeding the October election to be held in the next year thereafter, and until his successor shall be elected and qualified. But if said commissioners shall fail to make said appointment within the time herein specified, then the auditor of said county shall forthwith make such appointment, and all clerks in office or who may hereafter be elected shall continue in office until the second Monday of February succeeding the October election at which their successors shall be elected, and until their successors shall be elected and qualified."

When the revision of the statutes was made in 1880, sec. 6, which I have just read, was in force; but it was not carried verbatim into the revision. In its place we find sec. 1243, which the revisers, by annotation at the end of the section, state to have come from the law of 1872; but that part of the law which declared the newly elected clerk should begin his term of office on the second Monday in February was omitted and the method for selecting all elective officers where vacancies have occurred (unless some different specific provision is otherwise made) is defined in sec. 11, which was prepared by the codifiers, and, with the adoption of the revision, appears for the first time in the statutes of the state.

What was the intention of the codifiers by their action?

Did they intend to change the law or leave it as it was in 1872, when the law required an election for the full term, to begin when by law such term began?

In State v. Commissioners of Shelby county, 36 Ohio St., 330, the supreme court announced the following rule of construction as the one which would govern it in construing the revision of 1880:

"The court is only warranted in holding the construction of a statute which has undergone revision to be changed when the intent of the legislature to make such changes is clear or the language used in the new act plainly requires such change of construction to be made."

"Neither an alteration in phraseology nor the omission or addition of words in the latter statute necessarily require a change of construction, and the intent to give to the new act a different effect from the old should be clearly manifested."

And in Allen v. Russell (39 Ohio St., 337) the supreme court, by Judge Okey, who had been one of the commissioners to make the revision of 1880, declared:

"When all the general statutes of a state, or all on a particular subject, are revised and consolidated, there is a strong presumption that the same construction which the statute received, or if its interpretation had been called for, would certainly have received, before revision, and consolidation should be applied to the enactment in its revised form, although the language may have been changed."

And in State v. Auditor, 43 Ohio St., 315, the supreme court quoting with approval the citation just given from Okey, J., in Allen v. Russell, also adds: "Particular and positive provisions of a prior act are not affected by a subsequent statute treating a subject in general terms, and not expressly contradicting the provisions of the prior act, unless such intention is clear."

And as late as 1892 the Supreme Court in State v. Stout, 49 Ohio St., 284, again announces this principle of construction by declaring that:

"It was not the province, however, of the commissioners to amend the statutes so as to change their meaning, but to reduce them to a concise and comprehensive form. Changes of phraseology, therefore, thus introduced do not carry the weight they would be entitled to had it been a direct act of the legislature itself."

In view of the circumstance which I have previously referred to, that both the constitution and the statutes contain numerous express declarations that in the case of vacancies in certain offices

the election or appointment shall be for the unexpired term, and that sec. 11 contains no such express declaration, and in view of the circumstance that sec. 11 appears for the first time in the revision of the statutes, and is intended to be supplementary to sec. 1243, which is taken from the law of 1872, which required the election of a county clerk where a vacancy occurred to be for the full term of three years, and in view of the well-recognized rule of construction that there is a strong presumption that the law was not intended to be changed, even though the phraseology may be altered. I think I am entirely safe in the assertion that if by any reasonable construction sec. 11 may be interpreted as intending an election for a full term, and not to fill an unexpired term, the section shall be given such interpretation.

I am brought, therefore, to a consideration and construction of the language of the section.

The section for the purposes of an examination, may be divided into three parts, viz.: the first half of the section and the latter half containing two distinct clauses:

The first half reads as follows:

"When an elective office becomes vacant and is filled by appointment, such appointee shall hold the office till his sucessor is elected and qualified, and such successor shall be elected at the first proper election that is held more than thirty days after the occurrence of the vacancy."

As this part of the section does not declare for what length of time the newly elected clerk is to hold, it is not inconsistent with the construction that he is to hold for the full term of three years, as was the case before the revision; and this construction receives confirmation from the absence of any declaration that he is to hold for the unexpired term, a declaration which we should have expected as the easiest and most natural expression of the purpose of the legislature, if such had been its purpose.

Continuing, however, the reading of the section, we find in the next clause, which is the first part of the latter half of the section, a most important declaration in throwing light upon the intention of the codifiers in the drafting of this section. The clause is as follows:

"But this section shall not be construed to postpone the time for such election beyond that at which it would have been held, had no vacancy occurred."

"Such election," refers, of course, to the election previously referred to in the first part of the section, and is the election which is to take place when a vacancy has occurred and after the appointment has been made. But according to the language just quoted, such an election is one that would have been held in the course of time, even though no vacancy had ever occurred. As the only election which would have been held had no vacancy occurred is an election for three years. for the full term, it follows, it seems to me, as a demonstration that "such election" is an election for three years for the full term.

The purpose of inserting this clause is manifest. By the general provision in the first part of the section, if a vacancy occurred within thirty days preceding the election in November of any year in which an officer was to be regularly elected by reason of the natural course of time, such general provision would postpone the election until the November of the following year. In order to avoid such a contingency it is provided that when a vacancy occurs at that time, viz.: less than thirty days before the next proper election, the general provision shall not be operative, but the election shall proceed as if no such vacancy occurred: The reason for the provision that the election shall be the first proper election that is held more than thirty days after the occurrence of the vacancy is that if it were the next proper election, and less than thirty days had elapsed before the election there might not be sufficient time for the required notice to be given and other preliminary steps to be taken. But if the next proper election happens to be the regular election at which the clerk is to be elected by reason of the natural course of time, it is not necessary that the vacancy should have occurred more than thirty days before the election in order to enable the required notice to be given and other preliminary steps taken, because it would be known more than thirty days before the election, that such an election would be held, and the required notice would have been given and the preliminary steps would have been taken.

But if the true construction of the first part of sec. 11 is that it is intended to provide for an election for an unexpired term, and that the provision that the section shall not be construed to postpone the time for such election beyond that at which it would have been held had no vacancy occurred, was intended to allow an election to be held for the unexpired term and the regular term at the same election, (if such election was the regular election at which the clerk would be elected by reason of the natural course of time), then if a vacancy should occur for instance, twenty-four hours before such regular election, nevertheless the election for the unexpired term must also be held at that time without an opportunity

to give the required notice or for the various political parties to make nominations. Such a law would necessarily work a hardship both upon those who would be interested in a nomination for the unexpired term, and upon the voters who might wish to participate in the election of the same.

A construction which leads to such a conclusion can not be the true one, and must be rejected, leaving as the true construction of the section a requirement for an election in all cases for the full term of three years.

The concluding clause of the section still remains to be considered. This concluding clause is that "this section shall not be construed * * * to affect the official term or the time for the commencement of the same of any one elected to such office before the occurrence of such vacancy."

This clause is intended to provide for a case in which, after a clerk has been elected and before the time arrives at which he is to take his seat, the incumbent of the office dies. In such a case, if the first part of the section were followed, an election for a clerk would be held at the next proper election and the result would be that a conflict would arise between the one elected before the vacancy occurred and the one elected afterwards. In order to avoid this conflict this latter clause of section 11 is inserted by which the election of a clerk at the next proper election is avoided. Otherwise there would be an interference with the official term of one elected to the office before the occurrence of the vacancy.

My examination of the constitution and the statutes of this state with reference to vacancies in office leads me to the conclusion that the state has no uniform policy for filling vacancies in office, but that it follows three different policies or methods of filing vacancies without any clearly defined reason for adopting the one rather than the other policy.

These three methods are. First, an appointment for the unexpired term; Second, an appointment until the next proper election and an election to fill the unexpired term; and Third, an appointment until the next proper election and then an election for a full term; and that section 11 is intended to apply to the last class of cases.

The clerk of the common pleas court, therefore, elected at the November election will be elected for a full term of three years.

The question still remains:

When will he take his seat? Immediately after election and as soon as he has given bond and taken the oath of office, or on the first Monday in August, 1897?

The only ground for claiming that the clerk elected in November may immediately give bond, take the oath of office and assume the duties of the office is found in the language of section 11, in which it declares that "such appointee shall hold office till his successor is elected and qualified."

In determining this question it is important to know that by the act of 1872, which was in force when the revision was made, it is expressly declared that the appointee of the county commissioners shall hold his office until the second Monday of February succeeding the October election; and invoking the principles of construction which we have seen are to be applied where a revision is made of the statutes, we are not to assume that the codifiers intended by section 11 to so alter the law that a clerk appointed was not to hold until the second Monday in February, but was to vacate the office as soon after the October election as his successor elected at that election had qualified, unless such intention clearly appears.

And especially should this presumption hold in view of the fact that the act of 1872 further declared that "all clerks now in office or who may hereafter be elected shall continue in office until the second Monday of February succeeding the October election, at which their successors shall be elected and qualified," thus fixing the second Monday in February as the time for the beginning of every new term; and that the codifiers transferred this provision to the revision in section 1240 by declaring that "there shall be elected triennially in each county a clerk of the court of common pleas, who shall hold his office three years, beginning on the second Monday in February next after his election."

The canon of construction is elementary that all the statutes must be so construed, if possible, to give force and effect to all of them.

If the clerk elected for three years under section 11 could immediately take his office, then section 11 would be in direct conflict with section 1240, which, at the time of the adoption of section 11, declared that his term should begin on the second Monday in February.

It seems to me that, in using the word "qualify" in section 11, the codifiers had in mind that he would not qualify until authorized to do so, which would be the second Monday in February; and as this construction gives full force and effect to section 1240, I think it must be adopted as the true one.

Furthermore, if the officer, when elected under section 11, could have immediately qualified and assumed the duties of his office, then his term would have expired three years from the fall election, or from the date of his qualification and before the time for the be-

ginning of the term of his successor, viz., the second Monday in February.

In the case of the county clerk this might not have created a vacancy in the office for the period between the date of election and qualification and the second Monday in February, because the constitution as to that particular office provides that he shall hold until his successor is elected and qualified. But section 11 applies to offices other than that of county clerk. And in seeking a construction of the section we must test that construction by the results which would follow from it when applied to other offices as well as that of county clerk.

If the vacancy were in an office whose term was fixed by the constitution, as that of the county auditor, and who, therefore,, could not hold beyond it, as decided in State v. Brewster, 44 Ohio St., in such a case a vacancy would occur in the office between the time when his term expired and the time fixed for the beginning of the term of his successor—and would require an appointment to fill the vacancy. I can not think that a construction of section 11 which might lead to such a result could have been intended either by the codifiers or the legislature.

Since the codification of 1880 the fall election has been changed from October to November, and the beginning of the term of clerk of common pleas court has been changed from the second Monday in February to the first Monday in August.

It therefore, follows, as my. opinion, that at the next election in November a clerk of. the common pleas court shall be elected for the full term of three years, such term to begin on the first Monday in August, 1898; and that until that date the present incumbent, Monfort, is entitled to retain possession and discharge the duties of the office.

The question has been argued before me as to the right of this court to issue such an injunction as plaintiff asks, even if the construction of section 11, as contended by the plaintiff, is correct; but as, in my opinion, such construction is not well founded, I find it unnecessary to consider this question.

The demurrer to the petition is sustained and the action dismissed.

H. P. Goebel and H. D. Peck, for Plaintiff.

Drausin Wulsin and Rendigs & Dinsmore, for Defendants.